IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | No. C-10-CV-1250-PJH (EDL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION TO DENY MOTION FOR DEFAULT JUDGMENT** |
| GENARO MATA CAMPOS, LARRY PEARSON JONES and ALFREDO HERNANDEZ, individually and d/b/a EL DORADO MEXICAN RESTAURANT | |
| Defendants. | |

### I.    Introduction

Plaintiff J & J Sports Productions, Inc. filed this action against Defendants Genaro Mato Campos, Larry Pearson Jones and Alfredo Hernandez, each of whom is an alleged owner, operator, licensee, permittee or person in charge of a commercial establishment doing business as El Dorado Mexican Restaurant.  Compl. ¶¶ 7-9.  The complaint alleges violation of Section 605 of the Federal Communications Act of 1934, 47 U.S.C. § 553 (Cable and Television Consumer Protection and Competition Act of 1992), California Business & Professions Code § 17200, and conversion. Plaintiff alleges that Defendants unlawfully intercepted and exhibited a television program entitled "Latin Fury 8: 'Tijuana Thunder,' Chavez Jr. v. Cuello, WBO Latino Light Middleweight Championship Fight Program" (the "Program").  Id. at ¶ 14.

Defendants failed to timely respond to the Complaint.  On August 5, 2010, the Clerk of the Court entered default against all three defendants.  Judge Hamilton ordered Plaintiff to file a motion for default judgment and referred the motion to this Court for a Report and Recommendation.  This

motion for default judgment was originally filed by Plaintiff against all three Defendants. However, after the default judgment motion was filed, Defendants Genaro Mato Campos and Larry Pearson Jones moved to set aside default against them. On November 8, 2010, Judge Hamilton granted Defendants Genaro Mato Campos and Larry Pearson Jones' motion to set aside default and they answered the complaint the following day, so this motion is DENIED AS MOOT as to those two defendants. However, Defendant Alfredo Hernandez did not move to set aside default and has not appeared in the case so the motion for default judgment is still applicable to Mr. Hernandez. For the following reasons, the Court recommends that Plaintiff's motion for default judgment against Mr. Hernandez be DENIED.

## II. Background

Plaintiff obtained the exclusive nationwide commercial distribution (closed-circuit) rights to the Program, telecast domestically on March 28, 2009. See Compl. ¶ 11. Plaintiff entered into subsequent sub-licensing agreements with various commercial entities throughout North America, including entities within the State of California, by which it granted these entities limited sub-licensing rights to publicly exhibit the Program within their respective commercial establishments in the hospitality industry. Id. ¶ 12. The amount of the commercial sub-license fee to broadcast the Program was based on the capacity of the establishment and varies for each event. For this particular event, a commercial sub-license fee for a commercial establishment with a maximum fire code occupancy of up to 150 people would have been $1,200.00. See Gagliardi Decl. ¶ 8, Ex. 1. Plaintiff expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers. Compl. ¶ 13.

Plaintiff states that with the advent of pay-per-view programming, it has experienced a "serious erosion" in the sales of proprietary programming due to signal piracy. See Gagliardi Decl. ¶ 4. Therefore, Plaintiff has embarked upon a nationwide program to police its signals for the purpose of identifying and prosecuting commercial establishments which pirate its programming. Id. ¶ 5. Specifically, Plaintiff has retained auditors and law enforcement personnel to detect and identify signal pirates. Id. ¶ 6. Joseph M. Gagliardi, the president of J & J Sports Productions, states that Plaintiff's programming cannot be mistakenly, innocently, or accidentally intercepted. Id.

2

1  ¶ 9. He believes that persistent signal piracy continues because of a perceived lack of consequences
2  due to nominal or minimal damages awarded by courts. Id. ¶ 12.

3  Plaintiff alleges that Defendants, with full knowledge, unlawfully intercepted, received,
4  published, divulged, displayed and/or exhibited the Program at the time of its transmission at their
5  commercial establishment in Hayward, California. Compl. ¶ 14. Plaintiff alleges that the
6  interception and exhibition of the Program was done willfully and for purposes of direct and/or
7  indirect commercial advantage and/or private financial gain. Id. ¶ 15.

8  On March 28, 2009, the day of the Program, Gary Gravelyn, an investigator from Gravelyn
9  & Associates, observed the Program airing at Defendants' establishment. See Decl. of Affiant Gary
10 Gravelyn. Mr. Gravelyn reports that he entered El Dorado Mexican Restaurant at approximately
11 8:15 p.m. on March 28, 2009 without paying a cover charge and observed two televisions each
12 showing the Program. Id. Mr. Gravelyn states that the maximum occupancy capacity of El Dorado
13 is approximately 150 people, and he counted twelve people in the restaurant at the time of the
14 Program.

15 **III.    Discussion**

16 A court may not enter a default judgment against an unrepresented minor, an incompetent
17 person, or a person in military service. See Fed. R. Civ. P. 55(B)(2); 50 U.S.C. § 521(b)(1). Mr.
18 Hernandez is not a minor, incompetent person, or in the military. See Decl. of Thomas Riley ¶ 3.

19 The general rule is that, upon default, the factual allegations of the complaint, except those
20 relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826
21 F.2d 915, 917-918 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d
22 557, 560 (9th Cir. 1977). Necessary facts not contained in the pleadings, and claims which are
23 legally insufficient, however, are not established by default. Cripps v. Life Ins. Co., 980 F.2d 1261,
24 1267 (9th Cir.1992). Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on
25 damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the
26 default judgment. Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991). Relief
27 is limited to the plaintiff's specific demand in his complaint. Fed. R. Civ. P. 54(c). Entry of default
28 judgment requires the consideration of several factors, including: (1) the possibility of prejudice to

3

the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Here, the Eitel factors do not weigh in favor of entry of default judgment against Mr. Hernandez.

The substantive claim against Mr. Hernandez for violation of 47 U.S.C. Section 605 appears to have merit and the Complaint is sufficient to state a claim for violation of Section 605. Section 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Plaintiff alleges that Defendants, including Mr. Hernandez, were not authorized to intercept and exhibit the Program but did so anyway. Compl. ¶ 14. Further, Plaintiff's Complaint is sufficient to state a claim for conversion. Under California law, the elements of conversion are as follows: 1) ownership or right to possession of property; 2) wrongful disposition of the property right of another; and 3) damages. See G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff alleges that it obtained the nationwide distribution rights for the Program, and that Defendants unlawfully intercepted the Program and wrongfully converted it for their own use and benefit. Compl. ¶ 26. Plaintiff alleges that Defendants deprived Plaintiff of the license fee to which Plaintiff was entitled and would have received had Defendants obtained a license from Plaintiff. Id. ¶ 27.[1] Thus, the second and third factors fall in favor of default.

However, the remaining Eitel factors weigh against granting default judgment. With respect to possible prejudice to Plaintiff, if the motion is denied, Plaintiff may still be able to recover from

---

[1] Plaintiff's motion does not seek damages for Defendants' violation of 47 U.S.C. § 553 or California Business & Professions Code § 17200. Therefore, the Court need not reach the question of whether these claims have merit.

4

1  the other two defendants, who have now answered the complaint.  Additionally, since two of the
2  defendants have now answered and denied the allegations of the complaint and asserted "affirmative
3  defenses," there is a dispute concerning material facts.

4  Further, the answer states that: "Defendant Alfredo Hernandez sold the El Dorado Mexican
5  Restaurant to defendants Campos and Jones in the fall of 2008 and has had no involvement in the
6  operations of the restaurant ever since. Defendants Campos and Jones do not know the whereabouts
7  of defendant Hernandez and have therefore been unable to notify defendant Hernandez of this
8  lawsuit. To the knowledge of defendants Campos and Jones, defendant Hernandez has no
9  knowledge of this lawsuit." Answer at Affirmative Defense ¶ 1.  The proof of service on Mr.
10 Hernandez states that he was served by substituted service by serving the person in charge (a
11 female) at El Dorado Mexican Restaurant.  See Dkt./ #9.  Since Mr. Hernandez had no involvement
12 in the restaurant at the time of the substitute service, at least according to the co-defendants who say
13 they bought the restaurant from him in 2008,  he may not have been properly served.  At the very
14 least, he may not have received notice of the lawsuit, and thus his failure to respond may be due to
15 excusable neglect.  Further, the amount of money Plaintiff seeks appears to be somewhat excessive.
16 Plaintiff seeks the maximum amount in both statutory damages and enhanced damages for the
17 interception of the Program, even though the evidence shows that only twelve people were viewing
18 the Program and no cover charge was in effect.  Finally, there is a strong policy underlying the
19 Federal Rules of Civil Procedure favoring decisions on the merits, and this policy would be
20 undermined by granting default judgment against a defendant who apparently has no involvement in
21 the business at the time of the broadcast and may not have notice of the lawsuit – while the two
22 defendants admittedly involved in the decision to air the program are litigating the case on the
23 merits.

24 For the foregoing reasons, this Court recommends that default judgment be DENIED.  Any
25 party may serve and file specific written objections to this recommendation within fourteen (14)
26 days after being served with a copy.  See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil
27 Local
28 //
   //

5

**United States District Court**
For the Northern District of California

//

Rule 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court order.

**IT IS SO RECOMMENDED.**

Dated: December 8, 2010

ELIZABETH D. LAPORTE
United States Magistrate Judge